Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission, upon reconsideration of the evidence, reverses in part and affirms in part the Opinion and Award of the Deputy Commissioner as follows: the Deputy Commissioner's ruling on plaintiff's refusal to accept suitable employment is reversed, as is the resulting award of temporary total disability compensation; the rulings on plaintiff's average weekly wage, the noncompensability of plaintiff's other conditions, and the denial of plaintiff's motion for attorney's fees are affirmed.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a pre-trial agreement as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the Workers' Compensation Act.
2. That the Commission has jurisdiction over the parties and of the subject matter.
3. An employer-employee relationship existed between plaintiff and defendant-employer on 25 January 1994.
4. Plaintiff injured her back in an admittedly compensable accident on 25 January 1994.
5. The Industrial Commission on 18 March 1997 approved a Form 24 with an effective date of 13 January 1997.
6. The following exhibits were received into evidence by stipulation: Stipulated Exhibit 1 — Reports by JoAnn Hartley; Stipulated Exhibit 2 — a 24 April 1997 letter to B. Ruark from G. Piemonte; Stipulated Exhibit 3 — a 6 May 1997 letter to B. Ruark from G. Piemonte; Stipulated Exhibit 4 — a 22 May 1997 letter to G. Piemonte from B. Ruark; Stipulated Exhibit 5 — a 3 June 1997 letter to George Piemonte from B. Ruark. The Form 24 application and response was also made a part of the record by stipulation.
***********
Based upon the competent evidence introduced at hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 50 years old and unemployed. Beginning 23 September 1993, plaintiff was employed at Voyager Transportation as a truck driver. Shortly before that, she had obtained her learner's permit for truck driving. Her first driving job was with defendant-employer. Plaintiff initially drove as a team with her husband and was doing so on or about 25 January 1994.
2. On or about 25 January 1994, plaintiff was unhooking a trailer in the rain when she slipped on a cardboard box and fell, injuring her tailbone and her back.
3. Plaintiff was treated for her injuries that evening. She was placed on bed rest for one week, then released to return to work. Plaintiff worked for over a year with continuing back pain. During this period she was treated by Dr. Leon Grobler who eventually recommended surgery. Plaintiff obtained a second opinion from Dr. David DuPuy, who agreed that surgery was necessary. Dr. DuPuy told plaintiff she should quit smoking, as there is a 50% failure rate for back surgeries among smokers. He would not recommend that back surgery be performed if plaintiff continued to smoke. According to Dr. DuPuy, smoking interfered with the healing process. Plaintiff told Dr. DuPuy she would quit, but despite Dr. DuPuy's warning, plaintiff did not quit smoking.
5. Fusion surgery was performed by Dr. Leon Grobler at North Carolina Baptist Hospital in Winston-Salem in March 1995.
6. Defendants accepted this injury as compensable and began paying plaintiff disability benefits at the rate of $295.83 per week based upon an average weekly wage of $443.59. Defendants submitted a Form 60 admission of liability.
7. Following her surgery, plaintiff continued to receive treatment from Dr. Grobler until October 1995 when Dr. Grobler ceased his practice in North Carolina. Plaintiff attended and completed a three week program of functional restoration and was discharged in October 1995. At that time, Dr. Grobler gave plaintiff a 30% permanent partial disability rating to her back.
8. Since her surgery, plaintiff has fallen three times as a result of her right leg giving way. One of these falls resulted in an injury to plaintiff's right wrist. The medical evidence presented fails to establish a causal relationship between plaintiff's compensable injury and her leg condition. Plaintiff has also suffered from bladder incontinence. Again, there is insufficient medical evidence to establish a causal relationship between this condition and plaintiff's compensable injury.
9. Following plaintiff's release, defendant-employer offered her a position as a security guard at a warehouse in Kannapolis. Occupational therapist Melba Jean Eason visited the site and analyzed the job. After her review of the job and presentation to Dr. Grobler, both agreed that the job would be appropriate for plaintiff. Plaintiff refused to accept the job, visit the location or attempt the position.
10. After Dr. Grobler released plaintiff and Dr. Grobler moved from the area, plaintiff was referred to and treated by Dr. David DuPuy of Charlotte Orthopaedics. Dr. DuPuy evaluated plaintiff on different occasions and on each occasion advised that plaintiff was able to return to work in the security guard position offered by the employer in Kannapolis. Dr. DuPuy was of the opinion that it would be detrimental to plaintiff s condition if she refused to return to work. Dr. DuPuy opined that plaintiff s refusal to work would result in a deterioration of her medical condition.
11. Plaintiff continued to refuse the offered job even after Dr. DuPuy advised that she should attempt the position.
12. The security job offered by defendants had not previously existed, but was not a created job due to the fact that defendants had recently purchased the warehouse in question. The new security position was a result of having purchased the warehouse and not a position created solely as an effort to return plaintiff to work.
13. On or about 18 March 1997, a Form 24 with an effective date of 13 January 1997 was approved by the Industrial Commission based upon plaintiff s unjustified refusal to return to work. Defendants have not paid plaintiff wage loss benefits since that time.
14. Dr. DuPuy, plaintiff's authorized treating physician for her back, released her with a 25% permanent partial impairment rating to her back.
15. At the time of her injury, plaintiff earned $.11 per mile as part of a team. As of the date of her injury, her average weekly wage was $443.59, yielding a compensation rate of $295.83. Plaintiff's earnings after her injury are not relevant to the calculation of average weekly wage.
***********
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable on-the-job accident on or about 25 January 1994, for which defendants accepted compensability and paid plaintiff wage loss benefits. N.C. Gen. Stat. § 97-2(6).
2. In or around January 1997, plaintiff was offered suitable employment through her employer. Plaintiff's refusal of the security job position was unjustified; therefore, she is not entitled to any further compensation during the continuance of such refusal. N.C. Gen. Stat. § 97-32.
3. While the security job at Kannapolis offered to plaintiff was a new position, it was not a created position within the meaning of Saums v. Raleigh Community Hospital,346 N.C. 760, 487 S.E.2d 746 (1997).
4. Plaintiff's bladder incontinence and complaints of her leg giving way are not causally related to her back injury or surgery and defendants are not responsible for any medical treatment for either condition. N.C. Gen. Stat. § 97-25.
5. There were reasonable grounds for the defense of this case. Accordingly, plaintiff is not entitled to an assessment of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Nor are there grounds to award plaintiff attorney's fees based upon defendants' failure to find plaintiff suitable employment following her recovery from her injury.
6. Plaintiff's average weekly wage was correctly calculated at $443.59, based upon plaintiff's earnings for the twelve months prior to her injury. N.C. Gen. Stat. § 97-2(5); Lovettev. Reliable Manufacturing Company, 262 N.C. 288,136 S.E.2d 685 (1964).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional compensation for her compensable back injury subsequent to the Form 24 suspension of benefits must be and is hereby denied for so long as plaintiff continues to unjustifiably refuse suitable employment.
2. Plaintiff's claim for compensation based upon her leg and related right wrist injury and her bladder condition is denied.
3. Plaintiff's claim for attorney's fees on grounds of unfounded litigiousness and/or an alleged violation of plaintiff's right to benefits under the Act is denied.
4. The parties shall divide the costs of this action.
This the ___ day of May, 1999.
 S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
DSC:jbd